FILED
2021 Nov-05  AM 08:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| PEARL DURANT,       ) | |
|      ) | |
| PLAINTIFF,      ) | |
|      ) | CIVIL ACTION NO.: |
| v.      ) | |
|      ) | |
| REGIONAL MEDICAL CENTER      ) | JURY DEMAND |
| BOARD, d/b/a NORTHEAST      ) | |
| REGIONAL MEDICAL CENTER,      ) | |
| a/k/a REGIONAL MEDICAL CENTER      ) | |
| ANNISTON,      ) | |
|      ) | |
| DEFENDANT.      ) | |

---

## COMPLAINT

---

### I.    INTRODUCTION

1. Plaintiff alleges Defendant subjected her to unlawful discrimination and practices in violation of federal law.

### II.    JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 1343(a)(3), the Title VII, 42 U.S.C. § 1981, Families First Coronavirus Response Act and state law claims.

3. Venue is proper in this Court because the Defendant employed the Plaintiff in Anniston, Calhoun County, Alabama.

1

## II.    PARTIES

4.    Plaintiff is over the age of eighteen (18) and is an adult citizen of the United States.

5.    Defendant, Regional Medical Center Board, d/b/a Northeast Regional Medical Center, a/k/a Regional Medical Center - Anniston, (hereinafter "Defendant" or "RMC"), is an employer for purposes of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981, as amended, and the Families First Coronavirus Response Act.

## III.    ADMINISTRATIVE PROCEDURES

6.    On or about May 21, 2020, within 180 days of the last discriminatory act of which Plaintiff complains, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Exhibit 1).

7.    Plaintiff's Dismissal and Notice of Rights was mailed by the EEOC to the Plaintiff on August 5, 2021, and Plaintiff filed suit within ninety (90) days of receipt of her Notice of Right to Sue.

8.    All administrative prerequisites for filing suit have been satisfied, and Plaintiff is entitled to bring this action.

## IV.    STATEMENT OF FACTS

9.    Plaintiff adopts and realleges paragraphs one (1) through eight (8) as if fully

set forth herein.

9.      Plaintiff is a black female and she began employment with the Defendant in
        or around July 2019, as a hospitality employee.

10.     On or about March 13, 2020, Governor Ivey declared a state of emergency
        due to the spread of Covid-19 and announced that all schools would be closed
        from on or around March 18, 2020, until April 6, 2020.

11.     On or about March 16, 2020, the Alabama Department of Public Health
        announced    recommendations    concerning    public    gatherings,    food
        establishments and other retail venues and businesses, including no gatherings
        of 50 or more persons.

12.     On March 16, 2020, due to the Covid-19 pandemic outbreak in Alabama and
        other employees testing positive for Covid-19, Plaintiff called the Defendant
        two hours ahead of her scheduled shift and spoke with two separate
        supervisors and informed them that she needed the day off to address the
        Covid-19 pandemic and issues related to her children.

13.     Plaintiff needed to take off one day to address safe care for her children while
        she was at work, to speak with a medical provider regarding her employment
        in a high risk environment in the hospital and risks to herself and her children,
        and to address concerns for her son who is high risk for exposure to Covid-19
        due to health issues.

14. Plaintiff was very specific in her request for time off and made it clear she was only requesting to be off one day and would report back to work the next day.

15. After Plaintiff called and requested to be off for one day, she received phone calls from employees informing her that Mandy, a white supervisor, was stating Plaintiff had been fired.

16. Mandy, white supervisor, previously made the statement that there were "too many blacks working here."

17. Plaintiff was instructed that she had to speak with Doug Scott, white Vice President of Human resources, before she could return to work.

18. Plaintiff contacted Mr. Scott as instructed and Mr. Scott informed Plaintiff she was being fired for absences in 2019.

19. Plaintiff informed Mr. Scott that she had a medical excuse for the majority of the absences.

20. Defendant falsely documented in Plaintiff's personnel file/employment documents on a RMC Employee Status Report, that Plaintiff "Resigned – Too nervous + scared to come to work due to Coronavirus."

21. Defendant also documented that Plaintiff's March 16, 2020 absence was an "unexcused absence."

22. Plaintiff was never disciplined for the 2019 absences, and she was never

presented with any discipline or documentation regarding any issue with her absences.

23.    In response to Plaintiff's EEOC charge the Defendant submitted a "drafted" corrective action/discipline for Plaintiff that was never shown to Plaintiff.

24.    Plaintiff has observed white employees being treated more favorably when they were not disciplined for policy violations and absences when black employees were fired for the same or similar alleged offense.

25.    Plaintiff was disciplined in January 2020, for leaving the premises without clocking out.

26.    Plaintiff understood she did not have to clock when she left the premises, as it was the practice, on a break and Plaintiff returned within the time allowed.

27.    White employees left the premises without clocking out and were not disciplined.

28.    Plaintiff observed one white employee leave the premises on multiple occasions without clocking out and report or return to work on more than one occasion intoxicated, and this employee was not disciplined or terminated.

29.    Defendant terminated Plaintiff on March 16, 2020.

## V.    STATEMENT OF PLAINTIFF'S CLAIMS

### COUNT ONE

**PLAINTIFF'S TITLE VII AND § 1981 RACE DISCRIMINATION CLAIMS**

31.     Plaintiff adopts and realleges paragraphs one (1) through eight (8) as if fully set forth herein.

32.     On or about March 13, 2020, Governor Ivey declared a state of emergency due to the spread of Covid-19 and announced that all schools would be closed from on or around March 18, 2020, until April 6, 2020.

33.     On or about March 16, 2020, the Alabama Department of Public Health announced recommendations concerning public gatherings, food establishments and other retail venues and businesses, including no gatherings of 50 or more persons.

34.     On March 16, 2020, due to the Covid-19 pandemic outbreak in Alabama and other employees testing positive for Covid-19, Plaintiff called the Defendant two hours ahead of her scheduled shift and spoke with two separate supervisors and informed them that she needed the day off to address the Covid-19 pandemic and issues related to her children.

35.     Plaintiff needed to take off one day to address safe care for her children while she was at work, to speak with a medical provider regarding her employment in a high-risk environment in the hospital and risks to herself and her children, and to address concerns for her son who is high risk for exposure to Covid-19 due to health issues.

36.     Plaintiff was very specific in her request for time off and made it clear she

was only requesting to be off one day and would report back to work the next day.

37. After Plaintiff called and requested to be off for one day, she received phone calls from employees informing her that Mandy, a white supervisor, was stating Plaintiff had been fired.

38. Mandy, white supervisor, previously made the statement that there were "too many blacks working here."

39. Plaintiff was instructed that she had to speak with Doug Scott, white Vice President of Human resources, before she could return to work.

40. Plaintiff contacted Mr. Scott as instructed and Mr. Scott informed Plaintiff she was being fired for absences in 2019.

41. Plaintiff informed Mr. Scott that she had a medical excuse for the majority of the absences.

42. Defendant falsely documented in Plaintiff's personnel file/employment documents on a RMC Employee Status Report, that Plaintiff "Resigned – Too nervous + scared to come to work due to Coronavirus."

43. Defendant also documented that Plaintiff's March 16, 2020 absence was an "unexcused absence."

44. Plaintiff was never disciplined for the 2019 absences, and she was never presented with any discipline or documentation regarding any issue with her

absences.

45. In response to Plaintiff's EEOC charge the Defendant submitted a "drafted" corrective action/discipline for Plaintiff that was never shown to Plaintiff.

46. Plaintiff has observed white employees being treated more favorably when they were not disciplined for policy violations and absences when black employees were fired for the same or similar alleged offense.

47. Plaintiff was disciplined in January 2020, for leaving the premises without clocking out.

48. Plaintiff understood she did not have to clock when she left the premises, as it was the practice, on a break and Plaintiff returned within the time allowed.

49. White employees left the premises without clocking out and were not disciplined.

50. Plaintiff observed one white employee leave the premises on multiple occasions without clocking out and report or return to work on more than one occasion intoxicated, and this employee was not disciplined or terminated.

51. Defendant terminated Plaintiff on March 16, 2020.

52. Plaintiff's race, African American, was a reason Plaintiff was terminated, factored into and was a motivating factor regarding Defendant's decision to terminate Plaintiff and Plaintiff pleads all available theories regarding her termination.

53. Defendant's discrimination of Plaintiff in violation of Title VII and 42 U.S.C. § 1981 caused Plaintiff injury.

54. As a proximate result of Defendant's unlawful discrimination, Plaintiff has suffered mental anguish, financial loss, shame, humiliation, emotional distress, loss of enjoyment of life and other non-pecuniary and pecuniary losses.

55. Plaintiff seeks declaratory and injunctive relief, and all legal and equitable relief available including back pay, benefits, front pay, interest, attorney's fees and costs, pecuniary and non-pecuniary compensatory damages for loss of career opportunities, humiliation, embarrassment, mental anguish, and any and all such other relief as the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a. Enter a declaratory judgment that Defendant's policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by Title VII and 42 U.S.C. § 1981, as amended;

b. Grant Plaintiff a permanent injunction enjoining Defendant's, their Agents, Successors, Employees, Attorneys, and those acting in concert with Defendant or at Defendant's request from violating Title VII and 42 U.S.C. § 1981,

as amended;

  c. Grant Plaintiff an Order requiring Defendant make her whole by granting appropriate declaratory relief, compensatory damages (including damages for mental anguish), punitive damages, interest, attorney's fees, expenses, costs; and

  d. Plaintiff prays for such other, further, different or additional relief and benefits as justice may require.

## COUNT TWO

## FAMILIES FIRST CORONAVIRUS RESPONSE ACT

56. Plaintiff adopts and realleges paragraphs one (1) through eight (8) as if fully set forth herein.

57. On or about March 13, 2020, Governor Ivey declared a state of emergency due to the spread of Covid-19 and announced that all schools would be closed from on or around March 18, 2020, until April 6, 2020.

58. On or about March 16, 2020, the Alabama Department of Public Health announced recommendations concerning public gatherings, food establishments and other retail venues and businesses, including no gatherings of 50 or more persons.

59. On March 16, 2020, due to the Covid-19 pandemic outbreak in Alabama and other employees testing positive for Covid-19, Plaintiff called the Defendant two hours ahead of her scheduled shift and spoke with two separate

supervisors and informed them that she needed the day off to address the Covid-19 pandemic and issues related to her children.

60.  Plaintiff needed to take off one day to address safe care for her children while she was at work, address school/childcare facilities closings and unavailability, speak with a medical provider regarding her employment in a high risk environment in the hospital and risks to herself and her children, and to address concerns for her son who is high risk for exposure to Covid-19 due to health issues.

61.  Plaintiff was very specific in her request for time off and made it clear she was only requesting to be off one day and would report back to work the next day.

62.  Plaintiff protected under the FFCRA and not an exempt "health care worker" the definition of exempt employees does not include "employees who do not provide health care services, such as IT professionals, building maintenance staff, human resources personnel, cooks, food service workers, records managers, consultants, and billers." 29 C.F.R. § 826.30.

63.  Plaintiff was instructed that she had to speak with Doug Scott, white Vice President of Human resources, before she could return to work.

64.  Plaintiff contacted Mr. Scott as instructed and Mr. Scott informed Plaintiff she was being fired for absences in 2019.

65.   Plaintiff informed Mr. Scott that she had a medical excuse for the majority of the absences, and as such these absences should not have factored into the decision to terminate Plaintiff.

66.   Defendant falsely documented in Plaintiff's personnel file/employment documents on a RMC Employee Status Report, that Plaintiff "Resigned – Too nervous + scared to come to work due to Coronavirus."

67.   Defendant also documented that Plaintiff's March 16, 2020, absence was an "unexcused absence."

67.   Plaintiff was never disciplined for the 2019 absences, and she was never presented with any discipline or documentation regarding any issue with her absences.

68.   In response to Plaintiff's EEOC charge the Defendant submitted a "drafted" corrective action/discipline for Plaintiff that was never shown to Plaintiff.

69.   Defendant terminated Plaintiff on March 16, 2020.

70.   Defendant is a company with less than 500 employees subject to the Families First Coronavirus Response Act ("FFCRA").

71.   Plaintiff was eligible for leave under the FFCRA.

72.   Plaintiff requested leave protected by the FFCRA.

73.   Defendant terminated Plaintiff after she sought leave protected by the FFCRA.

74.   Defendant unlawfully retaliated against Plaintiff.

75.   Defendant's conduct was not in good faith, nor did it have reasonable grounds for believing it did not violate the FFCRA.

76.   Defendant's conduct was willful and was intended to deprive Plaintiff of her rights under the FFCRA.

77.   Defendant's conduct injured Plaintiff.

78.   Defendant has interfered with Plaintiff's rights under the FFCRA, harassed Plaintiff for exercising er rights under the FFCRA, retaliated against Plaintiff for exercising her rights under the FFCRA, denied Plaintiff leave under the FFCRA and terminated Plaintiff I violation of the FCRA.

79.   Plaintiff seeks declaratory and injunctive relief, and all legal and equitable relief available including back pay, benefits, front pay, interest, attorney's fees and costs, pecuniary and non-pecuniary compensatory damages for loss of career opportunities, humiliation, embarrassment, mental anguish, and any and all such other relief as the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff seeks entry of judgment under the FFCRA against the Defendant pursuant to an Order awarding:

a.   Backpay damages;

b.   Liquidated damages;

c.    Injunctive relief, including back-pay (plus interest calculated at the applicable interest rates), reinstatement and/or reasonable front-pay, expungement of her termination from her personnel file, and training for the Defendant;

d.    that relief which is fair, just, and equitable under the circumstances of this case;

e.    reasonable attorney's fees;

f.    pre-judgment interest; and

b.    the costs of this suit.

## COUNT THREE

## PLAINTIFF'S OUTRAGE CLAIMS

80.   Plaintiff adopts and realleges paragraphs one (1) through eight (8) as if fully set forth herein.

81.   Plaintiff is a black female, and she began employment with the Defendant in or around July 2019, as a hospitality employee.

82.   On or about March 13, 2020, Governor Ivey declared a state of emergency due to the spread of Covid-19 and announced that all schools would be closed from on or around March 18, 2020, until April 6, 2020.

83.   On or about March 16, 2020, the Alabama Department of Public Health announced   recommendations   concerning   public   gatherings,   food

establishments and other retail venues and businesses, including no gatherings of 50 or more persons.

84.    On March 16, 2020, due to the Covid-19 pandemic outbreak in Alabama and other employees testing positive for Covid-19, Plaintiff called the Defendant two hours ahead of her scheduled shift and spoke with two separate supervisors and informed them that she needed the day off to address the Covid-19 pandemic and issues related to her children.

85.    Plaintiff needed to take off one day to address safe care for her children while she was at work, to speak with a medical provider regarding her employment in a high risk environment in the hospital and risks to herself and her children, and to address concerns for her son who is high risk for exposure to Covid-19 due to health issues.

86.    Plaintiff was very specific in her request for time off and made it clear she was only requesting to be off one day and would report back to work the next day.

87.    After Plaintiff called and requested to be off for one day, she received phone calls from employees informing her that Mandy, a white supervisor, was stating Plaintiff had been fired.

88.    Mandy, white supervisor, previously made the statement that there were "too many blacks working here."

89.    Plaintiff was instructed that she had to speak with Doug Scott, white Vice President of Human resources, before she could return to work.

90.    Plaintiff contacted Mr. Scott as instructed and Mr. Scott informed Plaintiff she was being fired for absences in 2019.

91.    Plaintiff informed Mr. Scott that she had a medical excuse for the majority of the absences.

92.    Defendant falsely documented in Plaintiff's personnel file/employment documents on a RMC Employee Status Report, that Plaintiff "Resigned – Too nervous + scared to come to work due to Coronavirus."

93.    Defendant also documented that Plaintiff's March 16, 2020 absence was an "unexcused absence."

94.    Plaintiff was never disciplined for the 2019 absences, and she was never presented with any discipline or documentation regarding any issue with her absences.

95.    In response to Plaintiff's EEOC charge the Defendant submitted a "drafted" corrective action/discipline for Plaintiff that was never shown to Plaintiff.

96.    Plaintiff has observed white employees being treated more favorably when they were not disciplined for policy violations and absences when black employees were fired for the same or similar alleged offense.

97.    Plaintiff was disciplined in January 2020, for leaving the premises without

clocking out.

98.   Plaintiff understood she did not have to clock when she left the premises, as it was the practice, on a break and Plaintiff returned within the time allowed.

99.   White employees left the premises without clocking out and were not disciplined.

100.  Plaintiff observed one white employee leave the premises on multiple occasions without clocking out and report or return to work on more than one occasion intoxicated, and this employee was not disciplined or terminated.

101.  Defendant terminated Plaintiff on March 16, 2020.

102.  Defendants injured Plaintiff.

103.  Plaintiff's termination contravened public policy.

**PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests the entry of a judgment against Defendants awarding Plaintiff the following:

a.   Compensatory damages to be determined by the trier of fact;

b.   Punitive damages to be determined by the trier of fact;

c.   Injunctive relief;

d.   That relief which is fair, just and equitable under the circumstances of the case; and

e.   The costs of this litigation.

**PLAINTIFF HEREBY REQUESTS TRIAL BY STRUCK JURY**

CYNTHIA FORMAN WILKINSON
State Bar I.D. No.ASB-9950-L68C
Attorney for Plaintiff

**OF COUNSEL:**
**WILKINSON LAW FIRM, PC**
1717 3rd Avenue North, Suite A
Birmingham, AL 35203
Tel.:  (205) 250-7866
Fax:  (205) 250-7869
E-mail: wilkinsonefile@wilkinsonfirm.net

**PLAINTIFF'S ADDRESS**:
Ms. Pearl Durant
c/o WILKINSON LAW FIRM, PC
1717 3rd Avenue North, Suite A
Birmingham, AL 35203

**PLEASE SERVE DEFENDANT AT THE FOLLOWING ADDRESS:**

Regional Medical Center Board,
d/b/a Northeast Regional Medical Center,
a/k/a Regional Medical Center – Anniston
c/o Louis Bass,
Chief Executive Officer
400 East 10th Street,
Anniston, Alabama 36207

# EXHIBIT 1

## EEOC CHARGE OF PLAINTIFF, PEARL DURANT

EEOC Form 5 (11/09)

| | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |

| | and EEOC |
|---|---|

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Pearl Durant | (b) (7)(C) 1 line redacted | |

| Street Address | City, State and ZIP Code |
|---|---|
| (b) (7)(C) 1 line redacted | Weaver, AL 36277 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| Regional Medical Center | 300+ | 256-235-5000 |

| Street Address | City, State and ZIP Code |
|---|---|
| 410 E 10th Street | Anniston, AL 36207 |

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest 02-20   Latest 03/16/20
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I am a Black female and I began working for the above-named employer in July 2019, as a hospitality employee. In February/March 2020 Covid-19 spread rapidly throughout the state of Alabama. On March 16, 2020, I informed my employer that I needed to take off for the day because I needed to address Covid-19 issues related to my son who has serious health issues and is at a higher risk for severe illness. Because I worked in the hospital, a high risk environment for exposure, I needed to take a day off work and determine the risk factors for me and my son regarding Covid-19, and how I could take precautions to protect us from this new and novel virus due to my concerns that my health and the health of my son would be jeopardized. On March 16, 2020, I called in and left a voicemail message and reported off work per the company policy and followed the policy. I reported off work like I had every other time. I did not resign or quit my employment and only asked off for the one day. I was asked by Katherine Noah, my supervisor, via text if I intended to come back to work. I responded and informed her that I would back to work the next day, that I was only reporting off work for one day. I was then informed that I had to speak with Doug Scott, before I could return to work. When I spoke with Doug Scott, he said I was fired because of old absences from 2019. This reason is untrue because I had a doctor's excuse for most, if not all, of my absences in 2019. When I mentioned this to Doug Scott, he changed the reason for my termination and stated I was being fired because I asked to be off work for one day due to Covid -19. I was fired on March 16, 2020.

I believe I have been discriminated against and fired because of my race, black, my gender, female and because of a disability and/or perceived disability. I believe that white employees and male employees were treated more favorably. I have been fired for reporting off from work. I also believe I have been discriminated against in violation of the ADA/ADAAA and have been denied a reasonable accommodation and terminated. A white person replaced me and performed my job after I was fired. I have been fired in violation of Title VII and the ADA/ADAAA.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY—When necessary for State or Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>5-21-20<br>Date    Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)<br>05 / 21 / 2020 |

My commission exp: 11/12/2022

# EXHIBIT 2

## NOTICE OF RIGHT TO SUE FOR PLAINTIFF, PEARL DURANT

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: **Pearl Durant**
(b) (7)(C) 1 line redacted
**Weaver, AL 36277**

From: **Birmingham District Office**
**Ridge Park Place**
**1130 22nd Street South**
**Birmingham, AL 35205**

| | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 420-2020-02093 | **MERCEDES RICARDO,** Investigator | (205) 651-7069 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*for   James C Love Sr*

**BRADLEY A. ANDERSON,**
**District Director**

August 5, 2021
*(Date Issued)*

Enclosures(s)

cc: **THE HEALTH CARE AUTHORITY OF THE CITY OF ANNISTON**
c/o Benjamin Wilson, Esquire
**Rushton Stakely**
**184 Commerce Street**
**Montgomery, AL 36104**

**Cynthia F. Wilkinson**
**WILKINSON LAW FIRM, PC**
**17717 3rd Avenue North**
**Suite A**
**Birmingham, AL 35203**